| | |
|---|---|
| SEAN ROBERT FRANCIS and DANIEL H. KING, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| TRACY JOHNS, DEBORAH A. GONZALES, CANDICE GREGORY, KAREN STEINOUR, and THE FEDERAL BUREAU OF PRISONS, | ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

This matter comes before the court on the motion to dismiss (DE # 45) pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to stay discovery (DE # 47) filed by defendants the Federal Bureau of Prisons ("BOP"), Deborah A. Gonzales ("Gonzales"), Candice Gregory ("Gregory"), Tracy Johns ("Johns"), and Karen Steinour ("Steinour"). Also before the court are the motion to appoint counsel (DE # 37), motion for issuance of summons (DE # 38), motion to amend (DE # 41), motion to compel (DE # 42), motion for a temporary restraining order (DE # 43), and motion for summary judgment (DE # 50) filed by plaintiff Daniel H. King ("King"). Defendants' motion to dismiss and motion to stay discovery are fully briefed. Defendants did not respond to King's motions. The issues raised are ripe for adjudication.

For the following reasons, the court grants in part and denies in part defendants' motion. The court grants defendants' motion to stay discovery and King's motion to amend. The court denies

King's remaining motions.

## BACKGROUND

On January 14, 2011, King and plaintiff Sean Robert Francis ("Francis") were civil detainees confined in the Maryland unit at the Federal Correctional Complex in Butner, North Carolina ("Butner") awaiting a hearing on the government's petition for their commitment pursuant to 18 U.S.C. § 4248.[1] Plaintiffs filed this action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Tracy Johns ("Johns"), Deborah A. Gonzales ("Gonzales"), Candice Gregory ("Gregory"), and the Federal Bureau of Prisons ("BOP").

Plaintiffs assert numerous violations of the Due Process Clause of the Fifth Amendment to the United States Constitution. Plaintiffs' due process claims generally challenge the more restrictive conditions of their confinement, the commingling of civil detainees and sentenced inmates, the application of the BOP's policies and procedures to civil detainees, the deprivation of civil detainees' constitutional and statutory rights, and the unlawful searches of civil detainees.

On August 26, 2011, the court entered an order allowing plaintiffs to amend their complaint to include Steinour as a defendant in this action, and to supplement their complaint with additional allegations. The court also allowed Francis voluntarily to dismiss his action.

On February 17, 2012, defendants filed a motion for summary judgment, arguing that King's claims should be dismissed because he failed to exhaust his administrative remedies prior to filing this action. The court denied defendants' motion.

---

[1] Title 18 U.S.C. § 4248 was enacted in July 2006 as part of the Adam Walsh Child Protection and Safety Act and provides for the civil commitment of "sexually dangerous person[s]" in federal custody for care and treatment, following the expiration of their federal prison sentences. 18 U.S.C. § 4248(a); see also, Timms v. Johns, 627 F.3d 525, 526 (4th Cir. 2010).

2

Following the court's denial of defendants' motion for summary judgment, King moved to amend his complaint to add unit manager Kenneth R. McKoy ("McKoy") as a defendant in this action. King also filed a motion for issuance of summons, motion to appoint counsel, motion to amend, motion to compel, and motion for a temporary restraining order.

On September 25, 2012, King was committed to the custody of the United States Attorney General as a sexually dangerous person pursuant to 18 U.S.C. § 4248(d).[2] United States v. King, No. 5:10-HC-2009-FL (E.D.N.C. Sept. 25, 2012). King remains in the BOP's Maryland unit.

On September 27, 2012, defendants filed a motion to dismiss for failure to state a claim upon which relief may be granted and a motion to stay discovery. King subsequently filed a motion for summary judgment.

The court turns its attention below to each of the motions in turn, beginning with the motion for appointment of counsel.

## DISCUSSION

A.  Motion to Appoint Counsel

King requests that the court appoint counsel in this action to assist with litigating his claims. There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975).

The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v.

---

[2] King was a civil detainee at the time his complaint was filed. Because King was at detainee a the time he filed his complaint and because he has not amended his complaint to include any allegations as to his status as a civil committee, King is considered a civil detainee for the purposes of analyzing his constitutional claims.

3

Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent ... that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.").

Because King's claims are not complex, and where he has demonstrated through the detail of his filings that he is capable of proceeding *pro se*, this case is not one in which exceptional circumstances merit appointment of counsel. Therefore, King's motion to appoint counsel (DE # 37) is DENIED.

B.  Motion for a Temporary Restraining Order

A temporary restraining order is an extraordinary remedy which should not be granted unless there is a clear showing of both likely success and irreparable injury. The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 345 (4th Cir. Aug. 5, 2009), vacated on other grounds, 130 S.Ct. 2371 (2010). The United States Supreme Court has stated that the movant must establish the following to obtain a temporary restraining order: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008); The Real Truth About Obama, Inc., 575 F.3d at 346.

King has failed to demonstrate irreparable harm or any of the other requirements necessary to obtain relief. Therefore, Kings's motion (DE # 43) is DENIED, for reasons that are set forth more particularly below, in the context of the court's consideration of defendants' motion to dismiss.

4

C.  Motion to Amend

King moved to amend his complaint to add McKoy as a defendant to this action and to supplement his allegations (DE # 41). Defendants did not oppose King's motion. Where leave to amend freely is allowed, hearing no opposition, in the interests of justice the court GRANTS King's motion to amend his complaint. See Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). McKoy is added as a party defendant to the action, and the court directs now issuance of summons to this individual. He shall be served with plaintiff's pleadings in the case, together with summons, and make his response as provided in the Federal Rules of Civil Procedure. The court presumes however him to join in defendants' motion to dismiss (DE # 45), and proceeds to consider it as it relates to all defendants to this action; to the extent claims are dismissed, this defendant is relieved of necessity to respond in future filing.

D.  Defendants' Motion to Dismiss

1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual

5

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

2.  Analysis

King alleges that his conditions of confinement violate his constitutional rights. A civil detainee's challenge to conditions of confinement arises under the Due Process Clause of the Fifth Amendment to the United States Constitution. Hicks v. James, 255 F. App'x 744, 748 (4th Cir. Nov. 28, 2007). The Fifth Amendment generally prohibits civilly committed persons from being subjected to punitive confinement conditions. See Youngberg v. Romeo, 457 U.S. 307, 321-322 (1982); Bell v. Wolfish, 441 U.S. 520, 535-536 (1979). To establish a conditions of confinement claim pursuant to the Fifth Amendment, a civil detainee must show either (1) an expressed intent to punish; or (2) lack of a reasonable relationship to a legitimate non-punitive governmental objective, from which a punitive intent may be inferred. Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988).

In determining whether challenged conditions constitute punishment, the legal standard employed for civil detainees under the Due Process Clause is largely the same as that used in analyzing prisoner's claims pursuant to the Eighth Amendment to the United States Constitution. Hicks, 255 F. App'x at 748. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

6

The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Beginning with the objective prong of the Eighth Amendment test, "for prison conditions to rise to the level of unconstitutional punishment, there must be [objective] evidence of a serious medical and emotional deterioration attributable to the challenged condition." Id. at 1380. If a plaintiff satisfies the objective prong of the Eighth Amendment test, the court must consider the second prong of the Eighth Amendment test–whether defendant acted with deliberate indifference to plaintiff's serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

a. More Restrictive Conditions of Civil Detainees

King contends that civil detainees are subject to more restrictive conditions of confinement than sentenced inmates. As part of his claim, King challenges his placement in the Commitment and Treatment Program ("CTP"), a behavior modification program, prior to any adjudication of the commitment petition against him. This claim, however, is foreclosed by United States v. Timms, 664 F.3d 436 (4th Cir. 2012), in which the Fourth Circuit Court of Appeals found no due process violation for detention of a person, pending a civil commitment hearing, who has been certified as sexually dangerous. Id. at 449-450 (finding § 4248 does not deprive detainees of equal protection

7

and that the delay between a detainees § 4248 certification and commitment hearing does not violate due process), cert. denied, 133 S. Ct. 189 (2012).

Additionally, King fails to provide any facts to support a finding that his confinement in the CTP and/or compelled participation in the program's behavior modification program is punitive. Thus, the court dismisses these claims. See, e.g., Allison v. Snyder, 332 F.3d 1076, 1079-1080 (7th Cir. 2003) (holding the placement of persons civilly confined under the Illinois Sexually Dangerous Persons Act in sex offender group therapy program did not violate due process).

King also asserts that he does not have the same access to education or vocational programs as convicted inmates. As a civil detainee, King has no constitutional right to educational or vocational programs. See, e.g., McKune v. Lile, 536 U.S. 24, 38-40 (2002); see Sims v. Lexington County Detention Center, No. 3:06-3490-PMD, 2008 WL 216345, at *5 (D.S.C. Jan. 24, 2008) (citing Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1998)); Burch v. Jordan, No. 07-3236, 2010 WL 5391569, at *22 (D. Kan. Dec. 22, 2010) (holding that "[p]articipation in a vocational training program while involuntarily confined [under the Kansas Sexually Violent Predator Act] is a privilege, not a right guaranteed by the federal constitution."), aff'd, 444 F. App'x 236 (4th Cir. Sept. 22, 2011); Young v. Monahan, No. 06-C 1193, 2008 WL 182244, at *4 (N.D. Ill. Jan. 16, 2008) (holding civil detainees under the Illinois Sexually Violent Person Act had no constitutional right to vocational or educational programs). Thus, King fails to state a claim upon which relief may be granted.

Finally, King alleges that convicted inmates enjoy more favorable access to laundry facilities and recreation time. For instance, King asserts that convicted inmates may participate in recreation from 6:30 a.m. until 8:30 p.m. seven days per week, whereas civil detainees are limited to two hours

8

of recreation per day. King similarly asserts that convicted inmates have access to laundry facilities five days per week, but that civil detainees are permitted access only one day per week. Taking plaintiff's allegations as true, as this court must on a motion to dismiss, where plaintiff alleges defendants permit fourteen (14) hours daily of recreation for convicted inmates and only fourteen (14) hours weekly for civil detainees, the court finds that the alleged disparity in treatment as set forth in the complaint states a claim. See Youngberg, 457 U.S. at 321-322 (finding the Fifth Amendment generally prohibits civilly committed persons from being subjected to punitive confinement conditions). Thus, the court DENIES in this limited part defendants' motion to dismiss as it related to a claim concerning more favorable access to recreation time. Plaintiff's contentions concerning more limited access to the laundry facility, taken as true, do not present disparity in treatment rising to the same level, and, therefore, as to his claim concerning access to laundry facilities, this claim is dismissed. For the foregoing reasons, plaintiff's due process claims that generally challenge the more restrictive conditions of confinement are DISMISSED in large part, with only that challenge on the basis of substantially reduced access to recreational opportunities at FCI Butner surviving defendants' motion.

        b.      Commingling with Sentenced Inmates

King alleges that his Fifth Amendment rights were violated due to incidental daily contact with sentenced inmates engaged in "threatening and harassing" behavior including calling them "baby rapers" and "child molesters." Compl. p. 5. King additionally challenges the BOP's practice of allowing convicted prisoners to cut civil detainees' hair, commingling while waiting for medical treatment, and commingling at meal time. King further states that the BOP staff offices are located in the Maryland unit, and that convicted inmates must go to the Maryland unit to visit staff offices.

King asserts that BOP staff laugh when the harassment occurs, and that "it is only a matter of time until a federal prisoner assaults a civil detainee." Id.

As other courts have held, the practice of housing civil detainees with convicted inmates does not, by itself, violate a civil detainee's constitutional rights. See, e.g., Silvera v. Connecticut Dept. of Corr., 726 F. Supp.2d 183, 195-96 (D. Conn. May 27, 2010) (finding that housing pretrial detainees with sentenced inmates, alone, does not violate the detainee's constitutional rights); Young v. Monahan, No. 07-C-1193, 2008 WL 182244, at *2-3 (N.D. Ill. Jan. 16, 2008) (dismissing for failure to state a claim challenge to "co-mingling" of detainees and persons committed as sexually violent persons); Burciaga v. County of Lenawee, 123 F. Supp. 2d 1076, 1078-79 (E.D. Mich. 2000) (holding "unless the state acts with the impermissible intent to punish a pre-trial detainee or is deliberately indifferent to a pre-trial detainee's safety, it does not violate the due process clause to house that pre-trial detainee with a sentenced inmate.")

Here, King does not allege sufficient facts to demonstrate more than speculation about a possible risk of future harm due to his status as a § 4248 civil detainee. Although he made the general allegation that he was threatened by convicted inmates, he provided no details or dates as to when the alleged threats occurred or whether any defendant was made aware of the specific threat. The court finds that these facts are insufficient to state an Eighth Amendment claim. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (finding that there is a minimum level of factual support required to state a constitutional claim); Stritehoff v. Green, No. CCB-09-3003, 2010 WL 4941990, *4 (D. Md. Nov. 30, 2010). Therefore, King fails to state a claim upon which relief may be granted. For the reasons sets forth herein, plaintiff's challenge resting on the commingling of civil detainees and sentenced inmates in the various instances described, cannot survive defendants' motion to

dismiss and these claims are DENIED.

### c. Application of BOP Policies to Civil Detainees

King contests the fact that he is subject to the exact same conditions of confinement as federal inmates serving a criminal sentence, including the requirement to wear a uniform, being forced to use the prison commissary for purchases, the policy of double bunking, and being limited in which programs he may watch on television. Generally, "placement [of a civil detainee] in a prison, subject to the institution's usual rules of conduct, [does not per se] signify punishment . . . ." See Timms v. Johns, No.5:10-CT-3210-BO, 2012 WL 4433280, at *3 (E.D.N.C. Sept. 24, 2012) (dismissing for failure to state a claim Timm's challenge to prison requirement that civil detainees wear prisoner uniforms) (citations omitted); Allison, 332 F.3d at 1079, see Lucas v. Rivera, No. 2:08-3373-HFF-RSC, 2009 WL 902355, at *2 (D.S.C. Mar. 31, 2009) (holding that a prisoner "has no right protected by the constitution to buy items at the lowest price possible") (footnote omitted); Allison, 332 F.3d at 1080 (finding that "double celling" does not violate due process rights).

Here, King has not asserted how the BOP's requirement that civil detainees wear the same uniform as convicted inmates is punitive. Nor has King asserted how the general application of BOP policies, including those regulating commissary purchases, double bunking, and access to television, is punitive. See Allison, 332 F.3d at 1079 (finding that civil detainees detained as sexually dangerous persons may be subjected to the ordinary conditions of confinement).

In addition to the above-stated policies, King asserts that his due process rights are violated because he is subject to the same disciplinary procedures as convicted inmates. However, civil detainees are subject to the same security policies as those used at correctional facilities. See Allison, 332 F.3d at 1079 ("If pretrial detainees may be subjected to the ordinary conditions of

11

confinement, as [Bell v. Wolfish, 441 U.S. 520 (1979)] holds, then so may persons detained as sexually dangerous persons."). Thus, King fails to state a claim upon which relief may be granted.

On a related note, King generally challenges the fact that he has been placed in solitary confinement on occasion. Although the Fourth Circuit Court of Appeals has not addressed the issue, the Third Circuit Court of Appeals has determined that the placement in segregation of a person civilly committed pursuant to a state Sexually Violent Predator Act does not violate the Due Process clause unless the deprivation is in some way extreme. Deavers v. Santiago, 243 F. App'x 719, 721 (3d Cir. 2007); Cruz v. Main, No. 10-5605 (SDW), 2011 WL 3625068, at *5 (D.N.J. Aug. 15, 2011). Here, King does not allege any extreme deprivation. Rather, he simply challenges the fact that he was placed in solitary confinement, which is not sufficient to state a claim upon which relief may be granted. See, e.g., Cruz, 2011 WL 3625068 at *5.

For the reasons stated, plaintiff's claims of or relating to the application of the BOP's policies and procedures to civil detainees, are DISMISSED for failure to state a claim upon which relief may be granted.

d. Deprivation of Constitutional and Statutory Rights

King asserts that the BOP deprived him of his constitutional right to vote. Prior to his certification pursuant to § 4248, King was convicted of armed kidnaping in the District of Columbia, which is a felony conviction. United States v. King, 5:10-HC-2009-FL-JG (E.D.N.C.) (DE # 94, p. 14.) The United States Supreme Court in Richardson v. Ramirez, 418 U.S. 24 (1974), allowed for the disenfranchisement of persons convicted of a crime, including persons who have completed their sentences and parolees. Id. at 56. Accordingly, because King previously was convicted of a felony and because felon disenfranchisement is permissible, King fails to state a claim

12

upon which relief may be granted.

King also asserts that he is entitled to receive minimum wage pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-209 for work performed during his civil detention. However, the FLSA's minimum wage provisions apply only to workers who are "employees" within the meaning of the Act. See 29 U.S.C. § 206(a). The FSLA does not apply to convicted inmates. Harker v. State Use Industries, 990 F.2d 131, 133 (4th Cir. 1993). Further, the courts that have considered the issue have held that the FSLA does not apply to detainees. See Tourscher v. McCullough, 184 F.3d 236, 243-244 (3d Cir. 1999) (citing Villarreal v. Woodham, 113 F.3d 202, 206-207 (11th Cir. 1997)). Because the FSLA does not apply to detainees, King fails to state a claim upon which relief may be granted. This claim also is DISMISSED.

      e.      Unlawful Searches

King contests the BOP's policy of requiring civil detainees to submit their mail unsealed. Compl. p. 13. Civil detainees have a First Amendment right of free speech and to send and receive mail. Hudson v. Palmer, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977). Restrictions on an inmate's constitutional rights are valid "if [they are] reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987).

BOP policy provides that "outgoing mail from a pretrial inmate may not be sealed by the inmate and may be inspected by staff." 28 C.F.R. § 540.14(b). This policy is intended "to provide for the continued efficient and secure operation of the institution and to protect the public." 61 Fed. Reg. 64954-01. The BOP applies this policy to civil detainees because they pose a certain degree

13

of flight risk, and "the unsettled nature of their status may lead to misuse of the correspondence privilege." Id. The court finds that the BOP's policy regarding outgoing mail is reasonably related to legitimate penological interests. See Smith v. Delo, 995 F.2d 827, 830-831 (8th Cir. 1993) (policy requiring non-privileged mail to be unsealed so that it could be inspected for contraband and proper addressing did not violate the constitution); see, e.g., Weatherspoon v. Ferguson, 398 F. App'x 7, at *2 (5th Cir. 2010); Brown v. Hedrich, No. 10-CV-1089, 2012 WL 1995126, at *6 (E.D. Wis. May 31, 2012). Thus, the court finds that King failed to state a claim upon which relief may be granted.

The court next addresses King's challenge to the fact that BOP staff removed his Pre-Sentence Investigation Reports ("PSR") from his legal mail. Compl. p. 14. BOP policy prohibits an inmate from receiving a copy of his PSR in the mail. BOP Program Statement 1351.05, p. 15. BOP maintains this policy "[f]or safety and security reasons, including the following: Many PSRs [] contain information regarding the inmates' government assistance, financial resources, community affiliations, etc. The [BOP] has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs [] to learn if they are informants, gang members, have financial resources, etc." United States v. Truesdale, No. 3:92cr34, 2010 WL 3522266, at *2 (W.D.N.C. Sept. 7, 2010) (citing Keys v. Department of Homeland Security, 570 F. Supp. 2d 59, 71 (D.D.C. 2008)), aff'd, 415 F. App'x 468 (4th Cir. Mar. 8, 2011). The court finds that this policy is reasonably related to legitimate penological interests. Thus, King fails to state a claim upon which relief may be granted.

In addition to his mail-related claims, DISMISSED for reasons noted above, King alleges that he has been subjected to strip searches and "mass shakedowns" as a form of punishment. Compl. p. 12. In support, King alleges that civil detainees, himself included, are strip searched when they

14

"complain about their living conditions or speak[] out against staff." Id. King also alleges that mental health staff perform these searches with the intent to harass rather than for security or safety reasons. These claims stand in marked contrast from those related to mail matter, considered and dismissed above. The court finds that plaintiff's allegations are sufficient to state a due process claims challenging these searches. See Youngberg, 457 U.S. at 321-322 (finding the Fifth Amendment generally prohibits civilly committed persons from being subjected to punitive confinement conditions). Thus, defendants' motion to dismiss is DENIED as to claims of or relating to strip searches and "mass shakedowns" as a form of punishment.

E.  King's Motion for Summary Judgment

King filed a motion for summary judgment, but has not met his burden of demonstrating that there is no genuine issue of material fact with regard to his alleged constitutional violations. Thus, his motion for summary judgment is DENIED, also for reasons noted in the court's consideration of defendants' motion to dismiss above.

F.  Discovery Motions

King filed a motion to compel (DE # 42) and a motion for issuance of summons in which he requests that the court issue summons for the purpose of conducting discovery (DE # 38). In response, defendants moved to stay discovery (DE # 47) pending the resolution of their dispositive motion.

"Rule 26(c) of the Federal Rules of Civil Procedure authorizes the court to issue orders establishing an array of limitations on discovery." Yongo v. Nationwide Affinity Ins. Co. of America, No. 5:07-CV-94, 2008 WL 516744, at *2 (M.D.N.C. Feb. 25, 2008). The court may properly exercise its discretion pursuant to Rule 26(c) to issue a stay of discovery pending resolution

of dispositive motions. Tilley v. United States, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003), aff'd, 85 F. App'x 333 (4th Cir. 2004), cert. denied, 543 U.S. 819 (2004). Factors the court looks to in determining whether to issue a stay include the potential for the dispositive motion to terminate all the claims in the case or all the claims against particular defendants, strong support for the dispositive motion on the merits, and irrelevancy of the discovery issue to the dispositive motion. Yongo, 2008 WL 516744, at *2 (citing Tilley, 270 F. Supp. 2d at 735; Simpson v. Specialty Retail Concepts, Inc., 121 F.R.D. 261, 263 (M.D.N.C. 1988)). These factors are present in this instance.

Here, however, through the court's delayed action on the motion, defendants have achieved the result sought, with no prejudice to plaintiff. As such the motion to stay (DE # 47) is DENIED as MOOT; however, the court DISMISSES without prejudice – given the vastly different landscape of the case, where only a fraction of plaintiff's claims have withstood the test of defendants' motion to dismiss – King's discovery-related motions (DE ## 38, 42). It would be onerous and potentially confusing to require defendants to respond to those discovery-related motions, parsing only what remains at issue. The court directs below issuance of a case management order, which will provide among other things for conduct of discovery in the case. King may state as he deems appropriate, with regard to the rules governing discovery, discovery demands tailored to the issues remaining in the action, involving alleged disparities in recreation time, strip searches, and "mass shakedowns."

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE # 45) is GRANTED in part and DENIED in part. The motion is DENIED as to the following claims: (1) King's claim regarding disparities in recreation time; (2) King's claim regarding strip searches; and (3) King's claim regarding "mass shakedowns." The remainder of plaintiff's claims are DISMISSED, where in these

16

parts defendants' motion is GRANTED. King's motion to amend (DE # 41) is GRANTED, and the Clerk of Court is DIRECTED to add unit manager Kenneth R. McKoy as a defendant in this action, and oversee as set forth herein issuance of process; however, King's remaining motions (DE ## 37, 38, 42, 43, 50) all are DENIED. Defendants' motion to stay discovery (DE # 47) is DENIED as MOOT. The Clerk of Court is DIRECTED to enter a case management order.

SO ORDERED, this 28TH day of March, 2013.

LOUISE W. FLANAGAN
United States District Judge